LAKE HIWASSEE DEVELOPMENT COMPANY, INC., Petitioner,

v.

PIONEER BANK, Respondent.

Supreme Court of Tennessee.

March 8, 1976.

Harry Weill, Weill, Ellis, Weems & Copeland, Chattanooga, for petitioner.

Eugene N. Collins, Chattanooga, for respondent.

## OPINION

FONES, Chief Justice.

The single issue presented in this case is whether the purchase of notes at a discount beyond the legal rate of interest, and guaranteed at face value by the indorser, constitutes a "loan" rather than a "sale" so as to bring the transaction within the operation of our usury statutes.

Petitioner, Lake Hiwassee Development Company, Inc. a Tennessee Corporation, was engaged in the sale of lots in a development adjacent to Lake Hiwassee, North Carolina. Petitioner sold lots in the development taking a small downpayment, and the balance of the purchase price was evidenced by promissory notes secured by deeds of trust.

In 1962, Lake Hiwassee and respondent, Pioneer Bank, entered into an agreement whereby Pioneer Bank would purchase, at its discretion, promissory notes at a discount offered to it by Lake Hiwassee who would transfer title to Pioneer Bank by endorsement. Pioneer Bank had the right of full recourse against Lake Hiwassee should the maker of the note (purchaser of real estate) default. Additionally, a reserve fund agreement executed between Lake Hiwassee and Pioneer Bank gave Pioneer Bank the right to withhold up to thirty (30%) percent of the face amount of the

note. This reserve fund was held as security against Lake Hiwassee's contingent liability on its endorsement.

The amount of money that Lake Hiwassee received depended upon the length of the note (many of the notes were for a period of three (3) to five (5) years). If a note was payable over a period of five (5) years, the number of years would be multiplied by six (6%) percent, or a discount of thirty (30%) percent. Pioneer Bank would subtract the discount from the face of the note, along with the reserve, and the remainder would go to Lake Hiwassee in cash. Lake Hiwassee was entitled to the amount in this fund which exceeded thirty (30%) percent of the total of the unpaid notes, and would eventually receive all of it, or have it applied to reduce its liability as endorser on the notes. The reserve fund was also to secure loans made by Lake Hiwassee, Stainless Steel Metal Products, Inc., and Hiwassee Resort Village, Inc., which loans are not in dispute in this lawsuit.

The bank had complete ownership of the notes and could re-discount them if it wished. Upon acquiring title to the notes Pioneer Bank notified the makers and proceeded with the collection of the payments due. The record indicates that some of the makers defaulted and those notes were re-sold to Lake Hiwassee by debits to the reserve account.

It should be noted that Lake Hiwassee did not bring this suit to avoid the repayment of excess interest as compensation for the use of money. The theory of the bill is that Pioneer Bank has collected from the makers of the notes sums in excess of the amount paid Lake Hiwassee or, as alleged by it, the amount of money advanced. In short, Lake Hiwassee seeks to recover the profit the bank has made as a result of the transactions between the parties.

The Chancellor found that the sale of the instruments to Pioneer Bank did not constitute a subterfuge to avoid the usury statutes of this state, and that the transactions constituted valid sales of commercial paper.

The Court of Appeals affirmed, holding that absent a finding that the transaction was actually a loan in an attempt to exact usurious interest, a transfer of a negotiable instrument with recourse does not convert an otherwise valid sale into a loan; thus, the usury statutes are inapplicable.

The general rule is stated in 45 Am. Jur.2d *Interest and Usury* § 146 at 122:

"It is a general rule that the sale or purchase of negotiable or assignable commercial paper or other chose in action or evidence of indebtedness transferable in trade and business transactions, for a valuable or legal consideration after its first negotiation, is not usurious although the price or other consideration determined upon is less than the nominal or face value of the instrument purchased. The courts, however, always look beyond the form of the transaction and to its substance, when it is challenged as usurious, and even though it is in the form of a sale at a discount or a sale in the nature thereof of commercial paper or other choses in action, if it is in substance and purpose a loan in excess of the legal rate of interest it will be condemned as usurious."

Petitioner argues that by endorsing the notes with recourse it became liable to the bank for repayment, and the money the bank advanced petitioner for the notes constituted a loan. To constitute usury there must be a requirement that the money loaned be repayable absolutely. If it is payable only upon some contingency, the transaction is not usurious.[1] The basic definition of "loan" is an advance of money with an absolute promise to repay. Lake Hiwassee was not required to pay anything unless the maker of a note sold to Pioneer Bank failed to pay. It is well established that the courts of this State will disregard the form of the transaction and look to the substance of the dealings between the parties. *Mallory v. Columbia Mortgage & Trust Co.*, 150 Tenn. 219, 263 S.W. 68 (1923).

1. 45 Am.Jur.2d *Interest and Usury* § 156.

Petitioner relies upon *Campbell v. Read & Gray,* 8 Tenn. 392 (1828) for the proposition that when a transfer of a note is made with recourse at a greater than legal rate of discount, the transaction is in reality a loan. The Court in that case, however, was upholding a factual determination by the jury that the transaction actually amounted to a loan. There an underlying debt owed by the endorser to the endorsee was the reason the note in question was discounted. Later cases have looked to the substance of the transaction and distinguished between a note which at its inception constituted a real transaction and a note made for the purpose of raising money by sale in the market. *Holeman v. Hobson,* 27 Tenn. 127 (1847). As this Court stated in *Wetmore v. Brien & Bradley,* 40 Tenn. 723 (1859):

> "The purchase must be actual, and made in good faith, and not merely colorable, to cover a usurious transaction. A note made in the course of a real business transaction, for which the original party has given a valuable consideration, is regarded as property; and, like other property, the owner may sell it for the most he can get, and whatever profit the purchaser may make on his purchase, there is certainly nothing usurious in it. The owner may be induced, by doubts as to the solvency of the maker, or by the pressure of his necessities, to sell the note for less than its face, or less than its market value, and, in the absence of all fraud, this will not affect the validity of the transaction, or impart to it the character of usury. But if the note were made for the purpose of being sold, to raise money, or as an artifice to evade the usury laws, under the color of a sale and purchase of the paper, this will not avail . . . ." 40 Tenn. at 727.

We agree with the following statement of the Court in *Coast Finance Corporation v. Ira F. Powers Furniture Company,* 105 Or. 339, 209 P. 614 (1922):

> "It is a general rule that, after a negotiable instrument has once been validly negotiated by transfer for a valuable consideration it becomes an article of commerce and can be bought and sold as freely as any other property, the rate of discount being governed by the market value of such instrument, and upon principle and authority the owner of such property has a perfect right to name the price for which he is willing to sell and to refuse to accede to any other. The sale and assignment of such choses in action are not within the letter or spirit of the usury law." 209 P. at 615.

Thus, our courts look to the purpose for which the note was originally made. If executed and delivered in the course of a valid business transaction, it is not considered a loan; but if it is made for the purpose of raising money, then the form will be disregarded and it will be treated as a loan. *Smith v. Price,* 49 Tenn. 293 (1870); *Cantrell v. Ford,* 46 S.W. 581 (Tenn.Ch.App. 1898). For cases in other jurisdictions, see 165 A.L.R. 626 at 684.

Our commercial law shows that endorsement with recourse is standard procedure in this state and others that have adopted the Uniform Commercial Code:

> "Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor." T.C.A. § 47–3–201(3).

T.C.A. § 47–3–414 provides:

> "Unless the indorsement otherwise specifies (as by such words as 'without recourse') every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so."

The presence of a reserve fund is not determinative of the question of whether the transaction constituted a loan or sale. Lake Hiwassee, at the time of the initial negotiations, was a corporation with zero assets. The establishment of a reserve fund was a valid method whereby the bank insured that it would receive payment on

the notes endorsed by Lake Hiwassee, and is not sufficient to convert an otherwise valid sale into a loan. *See Jenkins v. Dugger,* 96 F.2d 727 (6th Cir. 1938).

■ We hold that, based upon the undisputed facts and the documentary evidence, the transactions were bona fide sales of commercial paper, not loans. Interest is compensation for the use of money which may be demanded by the lender from the borrower, and usury is interest in excess of the lawful rate. T.C.A. §§ 47–14–103, 47–14–104. A loan involving compensation for the use of money must be found to exist as a prerequisite to a finding of usury.

The Chancellor and the Court of Appeals have found that, in substance and in purpose, the transactions between the parties to this litigation were sales of commercial paper and not loans, and that Lake Hiwassee failed to carry the burden of proof establishing a violation of the usury statutes of this state. Such a concurrent finding of fact, and the inferences reasonably to be drawn therefrom, are conclusive upon this Court if there is any material evidence in support thereof. T.C.A. § 27–113. *Hoover Motor Exp. Co. v. Clements Paper Co.,* 193 Tenn. 6, 241 S.W.2d 851 (1951). The evidence abundantly supports that finding.

The decree of the Chancery Court of Hamilton County is affirmed. The costs are adjudged against petitioners.

HENRY and HARBISON, JJ., concur.

HYDER, Special Justice, concurs.

BROCK, J., not participating.